1

1                  IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF HAWAII

3

4    UNITED STATES OF AMERICA,        ) CRIMINAL NO. 00-00379HG
                                      )
5                   Plaintiff,        )
                                      )
6         vs.                         )
                                      )
7    RUSSELL GORDON MASCOTO,          )
                                      )
8                   Defendant.        )
     _____)

9

10                   TRANSCRIPT OF PROCEEDINGS

11        The above-entitled matter came on for hearing on

12   Monday, December 8, 2003, at 3:54 p.m., at Honolulu, Hawaii,

13   BEFORE:        THE HONORABLE HELEN GILLMOR
                    United States District Judge
14                  District of Hawaii

15   REPORTED BY:   STEPHEN B. PLATT, RMR, CRR
                    Official U. S. District Court Reporter
16                  District of Hawaii

17   APPEARANCES:   THOMAS C. MUEHLECK, ESQ.
                    U.S. Attorney's Office
18                  300 Ala Moana Boulevard
                    PJKK Fed. Bldg., Ste. 6100
19                  Honolulu, Hawaii   96813

20                              Attorney for the Government

21                  RUSTAM A. BARBEE, ESQ.
                    1188 Bishop Street, Suite 1310
22                  Honolulu, Hawaii   96813

23                              Attorney for the Defendant

24

25                  **EXHIBIT** E

```
 1   MONDAY, DECEMBER 8, 2003                         3:54 P.M.

 2                           -ooOoo-

 3            THE CLERK:  Criminal Number 00-379, the United

 4   States of America versus Russell Gordon Mascoto.

 5            This case is called for resentencing.

 6            MR. MUEHLECK:  Tom Muehleck with FBI Special Agent

 7   Terrence Chu for the United States.  Good afternoon,

 8   Your Honor.

 9            THE COURT:  Good afternoon.

10            MR. BARBEE:  Good afternoon, Your Honor.

11            Rustam Barbee appearing with Russell Mascoto; he is

12   present in court.

13            THE COURT:  Good afternoon.

14            Mr. Mascoto, have you had an opportunity to review

15   the presentence report with Mr. Barbee?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  Thank you; you may be seated.

18            Now, Mr. Barbee, what objections do you continue to

19   have?

20            MR. BARBEE:  Yes, Your Honor, thank you.

21            Essentially, the objections that Mr. Mascoto has are

22   stated in the recent written filing entitled "Supplemental

23   Response and Objections to Presentence Report."

24            Essentially, he's objecting --

25            THE COURT:  December 4?
```

1               MR. BARBEE:  Yes, Your Honor.

2               Essentially, he's objecting to those paragraphs of

3    the presentence report which state that he has a mandatory

4    minimum ten-year term that he's facing as opposed to a minimum

5    five-year term.  And I believe those would be paragraphs 52,

6    18 and 19.

7               THE COURT:  Okay, having received the Probation

8    Officer's response to that objection, which was, I guess,

9    filed today... what is your position with respect to that

10   interpretation, Mr. Barbee?

11              MR. BARBEE:  Yes, Your Honor.  I'm not surprised at

12   their interpretation.  And, in fact, I did point out in my

13   filing of December 4 that there are cases that interpret the

14   position taken here by defendant against the defense and in

15   favor of the Probation Department's interpretation.

16   Essentially, the research I conducted indicated that the

17   statutes follow the guideline -- I believe it's guideline

18   Section 2D1.1's manner of calculating methamphetamine.  And it

19   says that you can either go with the pure weight of the drug,

20   which is extrapolated by going with the gross weight

21   multiplied by the percentage and coming out with a "pure"

22   amount; or, you can go with the mixture.  And whichever weight

23   determination carries the highest base offense that the

24   guidelines say apply the highest level -- for base offense.

25              And then there are cases that have looked at that

1    issue and said that the statutes also work in a similar
2    fashion, even though the statutes don't explicitly appear to
3    work that way, I am aware that some of the cases say that you
4    apply the statutes in a similar fashion that the guidelines
5    are applied; however, that being said, Mr. Mascoto's argument
6    seems to be a logically based argument, based upon the plain
7    language of the statutes. And also, he's cited the court to a
8    previous ruling by Judge Mollway in another case that appears
9    to indicate -- or appears to support, at least partially, his
10   position taken here. And the bottom line argument is that if
11   the statutes are ambiguous as to whether to sentence him based
12   upon a mixture of between 50 and 500 grams of methamphetamine,
13   or a -- that weight of methamphetamine which is a mixture of
14   contaminate medium and then methamphetamine, in this case, 72
15   percent, I believe, that you apply the mixture statute, which
16   is the (1)(B) -- is the (b)(1)(B), five to 40 years, and not
17   the (b)(1)(A), which is the 10 years to life.

18                    So, it's a logically-based argument. It has been
19   dealt with in other courts before; however, one other twist in
20   this case, which I haven't seen in the research I did, was
21   that even though the plea agreement and the indictment both
22   allege crystal methamphetamine, or ice, the government in this
23   case does concede that the mixture having been tested by the
24   DEA lab, was, in fact, not crystal methamphetamine, or ice,
25   but was, in fact, a mixture containing D meth hydrochloride.

1    So that does make it a little -- that little twist makes it a

2    little, I think, unique, compared to the cases I've read.

3              THE COURT:  So, how -- go ahead.

4              MR. BARBEE:  And, lastly, Your Honor, Mr. Mascoto's

5    position about the plea agreement, in response, I guess, to

6    the addendum by the Probation Department, is that at the time

7    of his plea agreement, he was operating, I guess, on faith

8    that the substance was, in fact, crystal methamphetamine, or

9    ice, which it later turned out it wasn't.  So he did

10   stipulate, in his memorandum of plea agreement, that it was

11   crystal methamphetamine or ice; however, at that time, with

12   previous counsel, he did not have the DEA lab report, which

13   came back -- and, probably, the government didn't have it,

14   either -- indicating that the substance was not crystal

15   methamphetamine, or ice.  So that stipulation by the parties

16   between the government and the defendant in this case was

17   actually factually in error.  And the government has since

18   conceded that that language in the plea agreement saying that

19   it was crystal methamphetamine, or ice, was in error.

20             And the government's filing, which is attached as

21   Defendant's Exhibit A, United States' response to defendant's

22   motion for independent testing, filed August 22nd, 2001, I

23   believe, Mr. Muehleck, U.S. Attorney's Office, admits that the

24   substance was, in fact, not ice, and not crystal

25   methamphetamine, but 72 percent -- which is less than the 80

**52**

1  percent required to classify the substance as ice.

2        So that is another factor that I didn't see in any

3  of the cases.

4        But, the bottom line is, Your Honor, the

5  defendant -- and I'm probably getting ahead of myself here, to

6  argument -- the defendant would like the court to resentence

7  him to the same sentence that it imposed previously, which was

8  the 87-month term.

9        THE COURT:  Thank you.

10        Mr. Muehleck?

11        MR. MUEHLECK:  Well, first of all, we have two

12  decisions from the Ninth Circuit -- Alfeche is the first, and

13  Asuncion, I think, is the second -- where we deal with this

14  exact issue.  That we are talking about either the purity, the

15  amount of pure drug, from the whole mixture; that is, if you

16  take the whole mixture, the whole aggregate mixture, what is

17  the amount of pure methamphetamine that you have?  If you have

18  got a thousand grams and it's 10 percent pure, then you've got

19  100 grams of pure methamphetamine.  And, under Alfeche, that's

20  what they talk about.  It's -- in this case, over 50 grams of

21  methamphetamine, pure; or over 50 grams of an aggregate, or --

22  between 500 and 1,000 grams of an aggregate -- of a mixture

23  containing a detectable amount of methamphetamine.

24        In this case we have 260-some grams, and with the

25  purity level, it was 163, I think it is, grams of pure

1    methamphetamine.

2         Additionally, the defendant at the time of his

3    change of plea, was questioned about this and said that he

4    understood he was pleading guilty to a ten-year mandatory

5    minimum.  He did understand that.

6         THE COURT:  Okay, but, at that time, there was no

7    lab report.

8         MR. MUEHLECK:  That's right.

9         THE COURT:  So, everyone was in error.

10        MR. MUEHLECK:  Well -- well, everybody was in error

11   as to whether it was 80 percent pure methamphetamine --

12   d-methamphetamine hydrochloride to make it ice.  But, by

13   statute, it was still 50 grams of methamphetamine, meaning --

14   50 grams -- there was 50 grams of pure methamphetamine.  And

15   the case -- in fact, there is 50 grams of pure

16   methamphetamine.  There's 163 grams of pure methamphetamine.

17   And that's what the lab report shows.

18        Now, did it say that it was 50 grams of pure

19   d-methamphetamine hydrochloride?  No.  What we had was a gross

20   weight of the product, which appeared to be good, crystallized

21   methamphetamine.  Now, it wasn't good enough to be ice within

22   the meaning of the statute, but it was in a crystallized form

23   of 72 percent pure.  And then it turned out to be 163 grams.

24        So, I submit to the court, nobody's been misled by

25   this.  Nobody -- the statute is pretty clear what this is.

1    The purpose of the statute is pretty clear, what the meaning
2    of it is, and the context in which the Congress passed this
3    statute.  I don't know what more we can do with this, Judge.
4              THE COURT:  Well, do you disagree with Judge
5    Mollway's opinion?
6              MR. MUEHLECK:  Yes.  We have always disagreed with
7    that opinion.  We have changed the pleadings to make sure that
8    everybody was happy with the way it's pled; but, if it's pled
9    to 50 grams of methamphetamine, does it have to say 50 grams
10   of pure methamphetamine -- d-methamphetamine, hydrochloride, a
11   schedule two -- (incomprehensible) -- and that's what we had.
12   We had more than 50 grams of methamphetamine ice.  We had 163
13   grams in -- not in the purest form, of 260 -- or 231 grams,
14   but we had more than 50 grams pure.  In fact, we had 161 grams
15   pure.
16             That's where we're coming from.  Thank you.
17             THE COURT:  Thank you.
18             Well, I understand and appreciate that at the time
19   of the original sentencing everyone was unclear; however --
20   and, so, certainly, your client, Mr. Barbee, isn't held to the
21   stipulation.  There's no possible reason why anybody should be
22   held to that stipulation.  But Mr. Muehleck's point is, it
23   doesn't make any difference.  And, unfortunately, I think that
24   is the case law.  I don't see how to get around that.
25             While your theory and your reasoning is logical, we

1    have case law that we have to deal with.  And so I adopt the

2    Probation Officer's reasoning from the presentence report,

3    with respect to that issue.

4            Now, the court adopts the factual statements

5    contained in the presentence investigation report to which

6    there is no objection.  And we have clarified with respect to

7    the ones that are.

8            At this time the court is placing the presentence

9    report in the record under seal.  If an appeal is taken,

10   counsel on appeal may be permitted access to the sealed report

11   with the exception of the "recommendations" section.

12           There is a plea agreement in this matter, and the

13   court is satisfied that the agreement adequately reflects the

14   seriousness of the actual offense behavior, and that accepting

15   the plea agreement will not undermine the statutory purposes

16   of sentencing.  It is therefore accepted.

17           The court adopts the Probation Officer's conclusions

18   as to the total offense level of 31, criminal history category

19   of three.  And so the guidelines provide for a range of 135 to

20   168 months.  The defendant is not eligible for probation.

21   Supervised release of five years.  Fine range of $15,000 to

22   $4 million.  Community restitution not to exceed the fine

23   imposed, pursuant to United States sentencing guideline

24   Section 5E1.2.  And a special assessment of $100.

25           Now, this is your opportunity to speak to

1    sentencing, Mr. Barbee.

2                MR. BARBEE:  Yes, Your Honor.

3                THE COURT:  And your motion for downward departure.

4                MR. BARBEE:  Yes, Your Honor.

5                Mr. Mascoto has indicated in a letter to the court

6    his progress that he's had since being incarcerated.  He would

7    ask that the court sentence him to the minimum possible

8    sentence in this case.  Based upon the court's ruling, that

9    would be 120 months, minus time already served in custody.

10               Further, Your Honor, he would request that the court

11   recommend a designated facility of Terminal Island.  The

12   reason he's asking to switch from Sheridan to Terminal Island

13   is because of difficulties he's been having of getting into

14   the programs at Sheridan because of the long wait list.  But

15   he believes that if he were designated to Terminal Island, the

16   wait list would be much less -- less of a list.

17               THE COURT:  I haven't heard good things about

18   Terminal Island, Mr. Barbee...

19               MR. MUEHLECK:  Either have I, Your Honor.

20               THE COURT:  I am happy to do that, but -- maybe

21   Lompoc?

22               (Discussion off the record

23                between counsel and the defendant.)

24               MR. BARBEE:  Your Honor, Mr. Mascoto asks if he

25   could directly address the court on this subject?  Because I

1    didn't do a lot of research on it.

2              THE COURT:   Let's do that after.

3              MR. BARBEE:   Okay.

4              THE COURT:   Let's deal with the sentencing and put

5    that on the shelf for now.  I will hear from you, though.

6              MR. BARBEE:   Yes, Your Honor.

7              I believe -- and I may be incorrect, but I believe

8    that absent a government motion for a 5K substantial

9    assistance, or Mr. Mascoto's qualifying for a safety valve,

10   that the court's minimum sentence would be 120 months.

11             THE COURT:   Well -- and that would be granting the

12   downward departure from 135 -- because the range is 135 to

13   16-  --

14             MR. BARBEE:   Yes, Your Honor, you're correct.  I

15   apologize, you are correct.  We would ask that the court apply

16   the same reasoning that it did at the previous sentence, find

17   that there are factors in this case that take it outside the

18   heartland of those cases typically covered by the guidelines,

19   and that Mr. Mascoto's previous abuse is extraordinary when

20   compared with that of other defendants, and that the court

21   grant the departure to 121 months for sentence based upon the

22   defendant's youth and extraordinary childhood abuse.

23             THE COURT:   Thank you.

24             Now, Mr. Mascoto, this is your opportunity to

25   address the court.

1           THE DEFENDANT:  Your Honor, the reason I asked for a

2     change in my designation is because I have been there for a

3     year and a half, and I have only been in one class because the

4     prisons are so overcrowded.  So I heard that Terminal Island

5     has some good programs.  I was wondering if I could go there,

6     if I could?  Other than that, I just wanted to thank you for

7     giving me a second chance at life -- trying.  And thank my

8     lawyer for doing a good job.

9           That's about it.

10          THE COURT:  Thank you.

11          Mr. Muehleck?

12          MR. MUEHLECK:  On May 25th of 2001, we filed our

13    objection to a downward departure motion and indicated we

14    disagreed with Ms. Lovell's assessment that the information

15    that she had used came only from the defendant; the

16    defendant's mother was never interviewed.  And we simply did

17    not think this was a case outside the heartland.  And I will

18    just revoice those objections.  We are familiar with the

19    court's ruling before.

20          THE COURT:  Okay, thank you.

21          MR. MUEHLECK:  Thank you.

22          THE COURT:  This case involved documented abuse of

23    the defendant by his father, and the court had quite a lengthy

24    record, I believe, from the Family Court in which to review

25    the abuse that he had suffered.

1          That, coupled with his young age at the time of the
2    commission of this offense, I think, go together to take it
3    out of the heartland. And the court does find that the
4    abuse -- the extraordinary abuse, and the fact that he was
5    still so close to it, I -- I think there's a huge difference
6    between somebody being 30 years old and complaining about
7    something that happened in their childhood and a person who is
8    as young as Mr. Mascoto when he committed this crime. And I
9    think there has to be a connection seen between the closeness
10   of the abuse and the events that trigger him being arrested
11   and being brought before the court. And I do find that
12   connection here.

13         Whereas I do not usually find it in situations with
14   older defendants. I think you've got to make a distinction,
15   but here I see that connection. So I do find it to be
16   extraordinary and outside the heartland.

17         So I am going to sentence the defendant, based on
18   the downward departure, to 120 months, five years' supervised
19   release. I'm not going to impose a fine because I don't
20   believe he can pay it. Nor community restitution. And a
21   special assessment of $100 that is imposed has previously been
22   paid in full.

23         Now, there are conditions: One, that the defendant
24   shall abide by the standard conditions of supervision. Two,
25   the defendant shall not commit any crimes, federal, state or

1    local.    Three, the defendant shall not possess any illegal

2    controlled substances.    Four, the defendant shall refrain from

3    any unlawful use of a controlled substance.    The defendant

4    shall submit to one drug test within 15 days of release from

5    imprisonment, and at least two drug tests thereafter, as

6    directed by the Probation Office.

7              Number five, the defendant shall participate in a

8    substance abuse program, which may include drug testing, at

9    the discretion and direction of the Probation Office.  Six,

10   the defendant is prohibited from possessing a firearm, as

11   defined by Title 18, United States Code, Section 921.  Seven,

12   the defendant is prohibited from possessing any illegal or

13   dangerous weapons.  Eight, the defendant shall participate in

14   a mental health program at the discretion and direction of the

15   Probation Office.  And, nine, the defendant shall provide the

16   Probation Office access to any requested financial

17   information.

18             And the court is going to ask the Bureau of Prisons

19   to provide vocational, educational, and the longest drug

20   treatment program possible.

21             Now, I am not an expert on these prisons.  I don't

22   pretend to be.  But within the last week I have had an

23   attorney trying to talk his own defendant -- the defense

24   attorney trying to talk his own defendant out of going to

25   Terminal Island and suggesting that Lompoc was much more

1    conducive to a level of life that would be less difficult.
2    The complaints that he raised -- and I do not know, I am just
3    repeating what the defense attorney said -- was that it was a
4    temporary situation for many, many people, and so the
5    facilities, and the way it is set up, is more like the federal
6    detention center here than one of the places that has more
7    programs.

8           One possibility -- and I don't know how it would
9    turn out -- is just to ask for the location that would give
10   you the most access to programs and the 500-hour drug
11   treatment, because the 500-hour drug treatment will get you
12   time off your sentence.  Now, it could send you anywhere, and
13   if you're not up for that... but I think your stay is going to
14   be more pleasant if you do go someplace where they actually
15   have some programs and you can get into them.

16          Do you have any thoughts on that, Mr. Mascoto?
17          THE DEFENDANT:  Yeah, I wouldn't mind going to
18   Lompoc, but that's for low inmates, and I am a medium right
19   now, being housed at Sheridan, Oregon.  So, right now, I hear
20   Terminal Island is the best medium on the west coast,
21   Your Honor.

22          THE COURT:  But you are not restricted to the west
23   coast?
24          THE DEFENDANT:  True.
25          I also heard --

```
 1              (Discussion off the record

 2               between the defendant and counsel.)

 3              THE DEFENDANT:  Wisconsin -- I also heard Wisconsin.

 4              THE COURT:  Do you want me to put that down?

 5              THE DEFENDANT:  Yes, Your Honor, please.

 6              MR. MUEHLECK:  It's cold there...

 7              THE COURT:  Yeah, it's cold there.

 8              THE DEFENDANT:  It's cold at Sheridan, too.  It

 9     snows.

10              THE COURT:  Yeah, but Wisconsin and Oregon, trust

11     me, there's a big difference.

12              MR. MUEHLECK:  Yeah.

13              THE COURT:  But, be that as it may, do you want me

14     to recommend a particular place?  Or do you want me to say a

15     place where you would get the programs and the drug treatment?

16              THE DEFENDANT:  I would like Wisconsin.  Because I

17     don't get the drug program, too, on the east coast, is why --

18     because I have a two-point enhancement.  They don't give you

19     the year off no more.

20              (Discussion off the record between the

21               Probation Officer and the defendant and counsel.)

22              THE COURT:  Okay, so -- Oxford?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  Wisconsin.  Okay.

25              But I will also put that you are looking for access
```

1    to programs, and -- you're not going to get the longest drug

2    treatment no matter what we do?

3              THE DEFENDANT:  No.  I can get the program, but I

4    just don't get the time off.  I am already on the wait list

5    for the program, anyway, but I don't get the year off, because

6    of -- they gave the discretion, I guess, to the BOP.

7              MR. BARBEE:  That has to do with the two-point

8    weapon enhancement.

9              THE COURT:  Oh, yeah.

10             MR. BARBEE:  Additionally, Your Honor, Mr. Mascoto

11   wanted to read in, during his allocution portion, just his

12   interpretation of the issues that the court dealt with, which

13   I filed on his behalf.  A very short statement he would like

14   to read into the record.

15             THE COURT:  Okay.

16             THE DEFENDANT:  Your Honor, I don't understand why

17   the government charged me under 841(b)(1)(A) when I don't have

18   50 grams of ice, pure methamphetamine.  Your Honor, as I read

19   the statute, the statute makes a distinction between

20   methamphetamine, its salts, isomers and salts of its isomers

21   to mean a reference to pure methamphetamine.  It also

22   distinguishes between a mixture or substance containing a

23   detectable amount of methamphetamine, its salts, isomers and

24   salts of its isomers to mean a reference to impure

25   methamphetamine.

1            The government even admitted in my response brief

2       that what it contained was a mixture containing

3       methamphetamine of 72 percent purity.  The government also did

4       not -- (incomprehensible) --

5            THE COURT:  Read the last two sentences more slowly.

6            THE DEFENDANT:  The government even admitted, in my

7       response brief, that what it contained was a mixture

8       containing methamphetamine of 72 percent purity.  The

9       government also did not quote me, Russell Mascoto, on notice

10      in the indictment triggering the ten-year minimum mandatory.

11           THE COURT:  Slow down.

12           THE DEFENDANT:  And I assume Mr. Muehleck knows

13      exactly what I am talking about.  Mr. Muehleck has had this

14      situation happen before with other drug cases that have gotten

15      relief on the 841(b)(1)(B).  That's why the government ended

16      up superseding everyone who had ever pled guilty on --

17      (incomprehensible) -- indictments with the proper statutory

18      language triggering the minimum mandatory statutes.

19           So, as I read the statute, I feel that I should fall

20      under 841(b)(1)(B), less than 500 grams of a mixture or

21      substance containing methamphetamine.

22           That's all, Your Honor.

23           Thank you.

24           THE COURT:  Okay, thank you.

25           You may appeal your conviction if you believe your

1    guilty plea was somehow unlawful or involuntary, or if there's
2    some other fundamental defect in the proceeding that was not
3    waived by your guilty plea.  You also have a statutory right
4    to appeal your sentence under certain circumstances,
5    particularly if you think the sentence is contrary to law.
6          Now, this was sometime ago.  And what appeal rights
7    were waived in this plea agreement?  Were they -- was this
8    before we --
9          MR. MUEHLECK:  Yes.  Yes -- no, I think they were
10   waived, Judge.
11             MR. BARBEE:  My recollection --
12             MR. MUEHLECK:  I think it was their standard --
13             THE COURT:  But, remember that that was before --
14             MR. MUEHLECK:  Right, right.
15             THE COURT:  -- the time when --
16             MR. BARBEE:  Yeah, since the government is the one
17   that appealed in this case...
18             MR. MUEHLECK:  Well, we always maintain that right
19   to appeal in the standard --
20             MR. BARBEE:  Yeah, I believe he waived his right
21   except under two circumstances:  A sentence above the
22   guideline range and/or ineffective assistance of counsel.
23             MR. MUEHLECK:  Page 4, Your Honor.  He waives his
24   right to challenge his sentence in any manner that's been
25   determined -- collateral attack, etc., Page --

1          THE COURT:  I just wasn't sure when that paragraph
2     went in.

3          MR. MUEHLECK:  Yeah.

4          THE COURT:  So, you have entered into a plea
5     agreement which waives some of your rights to appeal the
6     sentence itself.  And such waivers are generally enforceable.
7     But if you believe the waiver is unenforceable, you can
8     present that theory to the appellate court.  And with few
9     exceptions, any notice of appeal must be filed within ten days
10    of judgment being entered in your case.  If you are unable to
11    pay the cost of an appeal, you may apply for leave to appeal
12    in forma pauperis.  And if you so request, the clerk of the
13    court will prepare and file a notice of appeal on your behalf.

14         It would seem to me that given that the plea
15    agreement contained an inaccuracy, that that would be a basis
16    under which there would be the ability to open the door for an
17    appeal, because given that inaccuracy -- while I agree with
18    Mr. Muehleck that it doesn't necessarily make a difference if
19    you interpret the statute the way he has, and the way some of
20    those Ninth Circuit cases do, it still is an issue which means
21    that the plea agreement was not totally accurate, and it is an
22    interesting issue, and it could be the case to -- you know...
23    it has a lot of aspects that make it a case that's worthy of
24    appeal, I think.

25         Okay, so, I'm going to recommend that you would go

1    to a venue that allows educational, vocational and longest

2    drug treatment possible, including -- and you have requested

3    Oxford, Wisconsin.  And I don't think there's anything else --

4    there are no counts to be dismissed?

5              MR. MUEHLECK:  No.  I was just going to ask the

6    court if I could put my objection on the record for the

7    departure, as our position is, it's outside the heartland and

8    I -- for whatever that's worth, Your Honor.

9              THE COURT:  You can certainly -- you can put it on

10   the record, but as a family -- as a former Family Court judge,

11   the court, having reviewed a number of Family Court records,

12   finds this to be extraordinary in the sense that you don't

13   usually get documented, prosecuted cases of child abuse, in

14   terms of people coming here for sentencing.  I don't know that

15   I have seen another one.  If I did, it's one in nine years.  I

16   mean, it's -- you don't get records like that.

17             MR. MUEHLECK:  Your Honor, you have never departed

18   for me -- or, a case I had where you departed on someone in

19   their thirties where there was child abuse.  I have never had

20   that before.

21             THE COURT:  No, and you probably won't.

22             MR. MUEHLECK:  I understand the court.  And I think

23   you said that in the case where it was raised, Your Honor.

24   And I understand where the court's coming from.

25             Thank you.

1          THE COURT:  I think we are all clear.

2          MR. MUEHLECK:  I think so.

3          THE COURT:  Okay, thank you.

4          Good luck, Mr. Mascoto.

5          THE DEFENDANT:  Thank you, Your Honor.  God bless.

6          THE CLERK:  Please rise.

7          Court stands recessed subject to call.

8          (The hearing in the above-entitled

9          cause was concluded at 4:23 p.m.)

10                          -  -  -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7                                    -ooOoo-

8           I, Stephen B. Platt, Official Court Reporter,

9    United States District Court, District of Hawaii, do hereby

10   certify that the foregoing is a true and correct transcript of

11   proceedings before the Honorable Helen Gillmor, United States

12   District Judge.

13

14

15

16

17

18

19

20   _____

21   FRIDAY, MARCH 19, 2004          STEPHEN B. PLATT, CSR NO. 248

22

23

24

25