```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,       ) CIVIL NO. 05-00748 HG-LEK
                                )
            Plaintiff,          ) CRIM. NO. 00-00379 HG
                                )
     vs.                        )
                                )
RUSSELL GORDON MASCOTO,         )
                                )
            Defendant.          )
_____ )
```

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY**

This matter is before the Court upon the "Motion to Vacate, Set Aside, or Correct Sentence" (Doc. 105) pursuant to 28 U.S.C. § 2255 by the pro se defendant, Russell Mascoto. Having considered the entire record, including the Motion (Doc. 105) and Response (Doc. 108), the Court denies the motion for the following reasons:

**I. Facts and Procedural History**

The facts of this case are undisputed. On September 7, 2000, Defendant Russell Mascoto was arrested after a search of his home uncovered a backpack containing plastic bags, $2,400.00 in U.S. currency, a stun gun, over fifty grams of methamphetamine, and a firearm with a loaded magazine. On September 14, 2000, the Grand Jury returned a one-count indictment, charging him with violating

21 U.S.C. § 841(a)(1) for knowingly and intentionally possessing with intent to distribute a quantity of crystal methamphetamine ("ice") in excess of 50 grams, a Schedule II controlled substance. (Doc. 4).

After plea negotiations through his counsel (Myles Breiner), defendant entered into a written plea agreement on October 4, 2000. (Doc. 19). In the plea agreement, Defendant acknowledged that he had knowingly possessed in excess of 50 grams of crystal methamphetamine with the intent to distribute it. (Doc. 19, ¶ 6). Subsequent Drug Enforcement Agency ("DEA") laboratory tests upon the methamphetamine showed that it weighed 231.7 grams with a purity of 72-percent, thus totaling a net weight of 166.8 grams of actual "pure" methamphetamine.

On August 20, 2001, defense counsel moved for independent testing of the drugs seized from Defendant. (Doc. 46).

Based on the DEA test results, the United States indicated it would stipulate that the methamphetamine seized from Defendant was not pure enough to be designated as "Ice".[1] (Doc. 47).

At sentencing on September 7, 2001, Defendant withdrew his motion for independent testing.

Based on the Defendant's young age of 21 and a documented history showing that he had experienced severe child abuse at the

---

[1] U.S.S.G. § 2D1.1 defines "Ice" as a mixture or substance containing d-methamphetamine hydrochloride of at least 80-percent purity.

hands of his father, defense counsel moved for a downward departure, which this Court granted. (Sentencing TR at 13.) Given that <u>United States v. Buckland</u>, 259 F.3d 1157 (9th Cir. 2001) had recently held § 841(b)(1)(A) and (B) unconstitutional, the Court did not impose the ten-year minimum sentence. Instead, the Court imposed a sentence of 87 months imprisonment, to be followed by three years supervised release. (Doc. 49).

The United States moved to correct sentence. (Doc. 50). The Court denied the motion and entered judgment on October 29, 2001. (Doc. 53, 60).

The United States appealed, arguing that <u>Buckland</u> had recently been vacated during the pendency of the appeal and that the ten-year mandatory minimum should apply. In light of its new decision in <u>United States v. Buckland</u>, 289 F.3d 558, 565-66 (9th Cir.)(en banc), <u>cert. denied</u>, 535 U.S. 1105 (2002), the Ninth Circuit remanded Defendant's case on April 21, 2003 for resentencing. <u>United States v. Mascoto</u>, 53 Fed. Appx. 416 (9th Cir. 2002); see Doc. 103 for copy of opinion.

Defense counsel moved to withdraw, and the Court appointed new counsel, Rustam Barbee who, on September 19, 2003, reasserted the defense motion for independent testing. (Doc. 82, 83). This Court granted the request. (Doc. 86). Additional testing confirmed that the methamphetamine weighed 231.7 grams with a purity level of 72-percent.

Defense counsel filed a "Supplemental Response and Objections to Presentence Report", arguing that the substance seized from Defendant was "a mixture containing less than 80 percent d-methamphetamine HCL", and that the United States had conceded that the drug seized from Defendant was not "Ice". (Doc. 87 at 3). Defendant pointed out that the Indictment had erroneously charged him with possessing "Ice", and that the plea agreement reflected the same factual error. He argued that although United States Sentencing Guidelines ("USSG") § 2D1.1 permits the conversion of an impure mixture into actual methamphetamine for sentencing purposes, the statutory minimum and maximum sentences under § 841(b) should not be determined by the guidelines, but by the language of the statute itself. Defendant concluded that he should not be subject to the ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A), but rather, only the five-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B) for possessing over 50 grams of a methamphetamine "mixture".

The United States responded that, under U.S.S.G. § 2D1.1 and Ninth Circuit precedent,[2] the amount of actual methamphetamine for purposes of sentencing may be "extracted" from the total weight of the substance. The United States asserted that since

---

[2] See <u>United States v. Alfeche</u>, 942 F.2d 697, 699 (9th Cir. 1991); <u>United States v. Asuncion</u>, 973 F.2d 769 (9th Cir. 1992).

the amount of pure methamphetamine in Defendant's case was in excess of fifty (50) grams, specifically a net weight of 166.8 grams, the mandatory minimum ten-year sentence should apply.

At re-sentencing on December 8, 2003, the Defendant's "Memorandum of Plea Agreement" was accepted, and the Court granted the Defendant's motion for downward departure. (Doc. 88). The Court imposed the mandatory minimum of 120 months of imprisonment, to be followed by five years of supervised release. (Doc. 88). As Defendant had possessed a firearm in his backpack along with the methamphetamine, the Court found that Defendant was ineligible for the "safety valve" provision. Amended judgment was entered on December 16, 2003.

Defendant appealed, 1) challenging the validity of his waiver of the right to appeal, and 2) arguing that the mandatory minimum sentence of 120 months should not have applied to the "mixture" possessed by Defendant.

On November 23, 2004, the Ninth Circuit Court of Appeals upheld his waiver and dismissed the appeal. United States v. Mascoto, 114 Fed. Appx. 819, 820 (9th Cir. 2002)(observing that "Defendant's waiver was knowing and voluntary at the time it was made"). (Doc. 103 for copy of opinion). The Ninth Circuit also pointed out that the weight of the extracted "pure" methamphetamine was 166.8 grams.

On November 29, 2005, Defendant signed and mailed his § 2255

motion from prison. (Doc. 105).

The United States responded on January 30, 2006. (Doc. 108).

## II. Issues Presented on § 2255

Defendant alleges 1) that his counsel was ineffective for "pleaing [me] to a faulty plea agreement" (Doc. 105 at 5), and 2) under United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005)(en banc), "if the record shows that the judge would rule differently I would be entitled to Re-sentencing". (Doc. 105 at 6).

## III. Analysis

### Statutory Jurisdiction

The federal habeas statute, 28 U.S.C. § 2255, provides that: "A prisoner in custody....may move the court which imposed the sentence to vacate, set aside or correct sentence." Defendant has correctly filed his motion in the sentencing court. At the time he filed this motion, Defendant was in federal custody at the United States Penitentiary at Lompoc, California.

### Applicability of "Antiterrorism and Effective Death Penalty Act of 1996", Successiveness

The "Antiterrorism and Effective Death Penalty Act of 1996" (AEDPA) was enacted on April 24, 1996, and its provisions apply to habeas petitions and § 2255 motions, such as the present one, filed after such date. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Williams v. Taylor, 529 U.S. 362, 402 (2000). The AEDPA requires courts to examine a § 2255 motion to determine whether it is

"successive". Defendant indicates he has not filed any other § 2255 motions, and the record does not reflect any.

### AEDPA One-Year Period of Limitations

A § 2255 motion to vacate by a federal prisoner is subject to a one-year period of limitation that generally runs from "the date on which the judgment of conviction becomes final". 28 U.S.C. § 2255, ¶ 6(1); and Clay v. United States, 537 U.S. 522, 524 (2003). Defendant's appeal after resentencing was dismissed on November 23, 2004, and he then had ninety (90) days to seek certiorari from the United States Supreme Court. United States v. LaFromboise, 427 F.3d 680, 683 (9th Cir. 2005). Defendant signed his § 2255 motion (Doc. 105) on November 29, 2005 and indicated he was mailing it on such date. Under the "mailbox rule" for pro se prisoners, this is deemed to be the filing date for the motion. See Houston v. Lack, 487 U.S. 266, 272 (1988). Defendant's motion was timely filed within one year of the expiration of the time for seeking certiorari.

### Relevant Standard

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**Issue 1: Whether Defendant Received Ineffective Assistance of Counsel**

Criminal defendants have the right to effective assistance of counsel under the Sixth Amendment. Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). To prevail on an ineffectiveness claim, the prisoner must show 1) objectively deficient performance by counsel, and 2) resulting prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. The defendant must overcome the "strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance..." Id. at 689.

Defendant argues that his counsel was ineffective for pleading him "to a faulty plea agreement". (Doc. 105 at 5). Defendant is referring to his initial retained counsel, who negotiated the original plea bargain. At resentencing, Defendant

was represented by a different attorney. With respect to the first attorney's performance in advising Defendant about the plea agreement, Defendant correctly asserts that the plea agreement contained a factual error with respect to the type of methamphetamine he possessed. Title 18 U.S.C. § 841(a) does not distinguish between "Ice" and other methamphetamine, so this did not affect the offense committed.

For purposes of determining whether counsel's performance was "objectively deficient" under the first prong of the <u>Strickland</u> standard, neither the United States nor defense counsel knew at the time of the plea agreement that subsequent testing would show that the methamphetamine seized from Defendant was slightly less pure than "Ice".

Manufactured methamphetamine is not 100% pure, and may contain waste products, impurities, or cutting agents. Hence, for purposes of sentencing, United States Sentencing Guideline § 2D1.1 differentiates between methamphetamine and "actual methamphetamine". Guideline § 2D1.1(c) defines actual methamphetamine as "the weight of the controlled substance, itself, contained in the mixture or substance". U.S.S.G. § 2D1.1(c) note (B); <u>see</u> <u>also</u>, e.g., <u>United States v. Bogusz</u>, 43 F.3d 82 (3rd Cir. 1994) (explaining that "actual" methamphetamine is the net amount of methamphetamine hydrochloride after all impurities or by-products have been removed, rather than the

gross amount).

To the extent Defendant is arguing that his first counsel should not have advised him to plead guilty prior to obtaining the test results, the United States points out that Defendant was sentenced for exactly what he actually possessed -- over 50 grams of pure methamphetamine. If Defendant had waited for the test results before accepting the plea agreement, his sentence would have remained the same. Defendant cannot show "prejudice" under Strickland on such basis.

The real crux of Defendant's argument is that he disagrees with imposition of the ten-year mandatory minimum sentence for his admitted possession of over 50 grams of actual methamphetamine. See 21 U.S.C. § 841(b)(1)(A)(viii).[3] He contends that the plea agreement should have indicated he possessed over fifty (50) grams of a mixture containing methamphetamine and that he should have been sentenced to the five-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B)(viii). Although he seeks to blame his attorney, Defendant cannot accurately claim that his counsel "mis-advised" him about the plea agreement on such a basis. The plea agreement correctly indicated that the penalty for possessing over fifty (50) grams of methamphetamine was a minimum

---

[3] As Defendant had possessed a firearm in his backpack along with the methamphetamine, he was ineligible for the safety valve provision. See, e.g., United States v. Ferryman, 444 F.3d 1183, 1185 (9th Cir. 2006).

ten-year sentence. (Doc. 19, ¶ 7(a).) Defendant's belief that the information would have allowed him to negotiate a better deal is inaccurate and provides no basis for relief.

Although Defendant alleges that his first counsel "misrepresented me, by me pleaing (sic) to a faulty plea agreement" under § 841(b)(1)(A)(viii), it should be clarified that Defendant actually pleaded guilty to a violation of § 841(a)(1), which provides that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

Title 21 U.S.C. § 841(b) establishes the penalties to be imposed upon conviction for the substantive offense. Specifically, § 841(b)(1)(A)(viii) provides in relevant part that for a violation involving "50 grams or more of methamphetamine ...or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life..."  The plea agreement specifically informed Defendant that a ten-year minimum sentence would apply.

Defendant contends that his counsel was constitutionally ineffective because he should have "pleaded" Defendant under § 841(b)(1)(B)(viii) instead. Such penalty provision indicates in relevant part that, for an offense involving "5 grams or more of

methamphetamine ...or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine", such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years..."

The performance by Defendant's first counsel was not objectively deficient on such basis, because binding Ninth Circuit precedent at the time (and now) holds that the amount of pure methamphetamine could be calculated from a less pure quantity for sentencing purposes. See United States v. Alfeche, 942 F.2d 697, 699 (9th Cir. 1991)(holding that "pure" methamphetamine may be extracted from a quantity of methamphetamine for purposes of sentencing); and United States v. Asuncion, 973 F.2d 769 (9th Cir. 1992). The plea agreement was consistent with such precedent, and Defendant cannot show that his counsel's advice regarding the plea agreement resulted in "prejudice" to the defense. Defendant has not overcome the presumption that his counsel's conduct was within the wide range of reasonable professional assistance.

The performance by Defendant's subsequent appointed counsel was also not objectively deficient under the Strickland standard. Counsel pursued the argument now advanced by Defendant. He filed written supplemental objections to the recommendations in the Presentence Report (Doc. 87) and orally argued such objections at considerable length. (See Resentencing Transcript, December 8,

2003 at 2-3). Counsel vigorously argued that the United States had conceded that the substance was not "Ice", but instead, a mixture containing 72% methamphetamine. He argued that the five-year mandatory minimum sentence for possessing a "mixture" should apply and that the language of the statute itself, not the guideline interpretation, should govern. He argued that under the plain language of the statute, Defendant could be sentenced for possessing in excess of 50 grams of a "mixture" containing methamphetamine. The fact that Defendant's counsel did not prevail on such argument does not mean his performance was "objectively deficient".

Although Mascoto had waived his right to appeal, his appointed counsel also brought an appeal after resentencing, challenging the waiver and arguing that a five-year sentence should have applied. The Ninth Circuit enforced Defendant's waiver. See Mascoto, 114 Fed. Appx. at 820 (holding that "Defendant's waiver was knowing and voluntary at the time it was made"). The Ninth Circuit further observed that the converted amount of actual ("pure") methamphetamine was 166.8 grams. Although the appellate court did not elaborate further, its reference to the weight of the "actual" methamphetamine at least suggests continuing agreement with Alfeche. Defendant has not shown any objective deficiency in this counsel's representation under the Strickland standard. Counsel (both retained and

appointed) vigorously and competently defended Mascoto at all stages of the proceedings. He has not shown that he received "ineffective assistance of counsel".

**Issue 2: Whether the <u>Ameline</u> Decision Requires Resentencing[4]**

Next, Defendant alleges that under <u>Ameline</u>, "if the record shows that the judge would rule differently I would be entitled to Re-sentencing". (Doc. 105 at 6.) In <u>United States v. Ameline</u>, 409 F.3d 1073, 1084 (9th Cir. 2005), the Ninth Circuit held that a limited remand is appropriate, "where it is not possible to reliably determine from the record whether the sentence imposed would have been materially different had the district court known that the Guidelines were advisory .... To find error under such decision, facts found by a judge must have been used to impose sentence under "mandatory" sentencing guidelines. <u>Id</u>. at 1078. This conclusion in <u>Ameline</u> is based on the United States Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), where the Supreme Court held that the federal sentencing guidelines were advisory.

Defendant is not entitled to any relief for several reasons. In the first place, "facts found by a judge" were not used to

---

[4]The Defendant refers to "Ameline II En Banc" in his motion. The decision in <u>United States v. Ameline</u>, 409 F.3d 1073 (9th Cir. 2005)(en banc) was issued on June 1, 2005. The decision was the second en banc decision of the Ninth Circuit Court of Appeals in that case. The Defendant subsequently filed his § 2255 motion on November 29, 2005, and quotes from the case.

impose Defendant's sentence. Rather, Defendant admitted to possessing over fifty grams of methamphetamine, which triggered the statutory mandatory minimum ten-year sentence. Moreover, <u>Booker</u> and the pertinent <u>Ameline</u> decision were issued after the Defendant's second appeal was dismissed on November 23, 2004. (Doc. 103). Like other <u>Apprendi</u>-line decisions,[5] <u>Booker</u> and <u>Ameline</u> only apply to cases on direct appeal, rather than retroactively to cases on § 2255 review. <u>See</u> <u>United States v. Cruz</u>, 423 F.3d 1119, 1120-1121 (9th Cir. 2005); <u>Hewett v. United States</u>, 372 F. Supp. 2d 585 (D. Haw. 2005)(holding that <u>Booker</u> is not applicable on § 2255 review); <u>Hirano v. United States</u>, 2006 WL 1343658 (D. Haw., May 15, 2006). Although Defendant argues that the statutory mandatory minimum only applied because of mandatory application of guideline § 2D1.1, this is essentially a <u>Booker</u> argument that is not cognizable on collateral review.

The United States Supreme Court has observed that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." <u>Brady v. United States</u>, 397 U.S. 742, 757 (1970). To the extent Defendant seeks to challenge his plea and the

---

[5]<u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000)("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

application of the statutory mandatory minimum sentence, the record does not suggest that his plea rests on a "faulty premise", as Defendant admitted he possessed over 50 grams of "pure" methamphetamine and was sentenced accordingly. The United States Supreme Court explained that:

> "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." Brady, 397 U.S. at 756-57.

Even supposing that Defendant's allegations of Ameline error were reviewable here, he would not be entitled to any relief. Any argument that Mascoto was incorrectly sentenced under mandatory guidelines would be moot due to the statutory mandatory minimum sentence applicable to the admitted offense of possessing over 50 grams of methamphetamine. See United States v. Thornton, 444 F.3d 1163, 1168 (9th Cir. 2006)(affirming sentence because, regardless of whether the federal guidelines are mandatory or advisory, the statutory mandatory minimum sentence of 120 months applied); see also, United States v. Labrada-Bustamante, 428 F.3d 1252, 1262-63 (9th Cir. 2005); United States v. Dare, 425 F.3d 634, 643 (9th Cir. 2005); United States v. Beng-Salazar, 452 F.3d 1088, 1096

(9th Cir. 2006).

In his plea agreement, Defendant admitted to possessing over fifty (50) grams of methamphetamine. The plea agreement correctly set forth that he was facing a "term of imprisonment which may not be less than ten years". (Doc. 19 at 2, ¶ 7(a).) Defendant voluntarily accepted such plea bargain and was then sentenced accordingly. Defendant is not entitled to any relief.

**No Hearing Required**

No hearing is required if the record conclusively shows that the petitioner is not entitled to any relief. Shah v. United States, 878 F.2d 1156, 1158 (9th Cir.), cert. denied, 493 U.S. 869 (1989). The United States Supreme Court has observed that "[t]o allow indiscriminate hearings in federal post-conviction proceedings ....would eliminate the chief virtues of the plea system-- speed, economy, and finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977); see also, United States v. Timmreck, 441 U.S. 780, 784 (1979). The allegations in the present § 2255 motion concern legal issues that can be decided on the record before the Court. The facts are not disputed, and a hearing would not help resolve any issues here.

**Certificate of Appealability ("COA")**

When a district court rules upon a § 2255 motion, a certificate of appealability ("COA") may be issued "only if the applicant has made a substantial showing of the denial of a

constitutional right", 28 U.S.C. § 2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling". Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Defendant has argued that his counsel was constitutionally ineffective because of his advice to plead guilty under a "faulty" plea agreement that indicated a ten-year minimum sentence based upon Defendant's possession of over 50 grams of methamphetamine. Defendant contends he should have pleaded to possessing over fifty (50) grams of a "mixture" containing 72% methamphetamine and been subject to a five-year mandatory minimum sentence. Counsel, however, correctly advised Defendant under existing law. The federal guidelines and binding Ninth Circuit precedent allowed the amount of actual "pure" methamphetamine to be calculated from the quantity of the methamphetamine. Although the plea agreement referred to the methamphetamine as "Ice", Defendant was accurately sentenced based on the amount of actual

methamphetamine admittedly possessed by him. He has not made a substantial showing of the denial of effective counsel on such a basis.

In his second claim, Defendant implicitly argues that the statutory mandatory minimum was improperly imposed because of mandatory application of guideline § 2D1.1. Defendant argues that he should be resentenced under Ameline, which involved application of the United States Supreme Court's decision in Booker. Such cases apply on direct appeal, not retroactively on collateral review. Given that every federal circuit to have considered the issue has held that Apprendi and its progeny, including Booker, are not applicable to cases on collateral review, jurists of reason would not debate the correctness of such a procedural ruling here.

Defendant has already appealed, and the Ninth Circuit Court of Appeals upheld his voluntary waiver. A motion to vacate may not be used as a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); Reed v. Farley, 512 U.S. 339, 354 (1994)(collateral review "will not be allowed to do service for an appeal"). Even if jurists of reason could debate whether Mascoto might have been sentenced for possessing over 50 grams of a "mixture" containing methamphetamine, a prisoner must satisfy both prongs of Slack to obtain a COA. Defendant has not done so.  Accordingly,

It is **ORDERED** that:

1. the "Motion to Vacate or Set Aside Sentence" (Doc. 105) by the Defendant is **DENIED** with prejudice, and

2. the Defendant is not entitled to a certificate of appealability.

Dated: Honolulu, Hawaii, September 28, 2006.



  /s/ Helen Gillmor
Chief United States District Judge

Civil No. 05-00748 HG-LEK and Crim. No. 00-00379 HG; <u>United States v. Russell Gordon Mascoto</u>, ORDER DENYING MOTION UNDER § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY